# WASHINGTON COUNTY,

## August Term, 1866.

[ Continued from *ante*, page 34.]

---

Barker and Haight *v.* S. F. Belknap's Estate, and Vermont
Central Railroad Company.

( CROSS BILL.)

S. F. Belknap's Estate *v.* Vermont Central Railroad Company and Barker and Haight.

[IN CHANCERY.]

*Practice. Chancery. Award. Contract.*

There can be no rehearing upon a question raised in a cross bill and answer, which
was raised and controverted in the original bill and adjudicated under the decree
in the same. *Stacy* v. *Vt. C. R. R. Co.,* 32 Vt. 551.

A. contracted to build a railroad for B. to be paid upon monthly estimates to be
made by B.'s engineers, of the work done, and made sub-contracts with C. for the
building of certain sections. As the work progressed the estimates made were
too small, and A. having died, C. presented claims against A.'s estate, on account
of said under estimates. There being matters in dispute also between A.'s
estate and B., they petitioned the probate court, as provided by statute, for an
order to refer all said matters to referees, and the order was granted and an
award duly made. The claim of C. against A's estate, on account of said under-
estimates, was also a valid claim on the part of A.'s estate against B. *Held*,
that said submission was broad enough to cover all claims and demands between
the parties, A.'s estate and B., including the claim on account of said under
estimates.

*Held*, also, that the claim being within the submission, the award is a bar to any
action brought for the recovery thereof, or of any claim that was included in the
submission, though it was not in fact brought before the arbitrators: the same
rule applying in this respect, as though it had been an award by deed.

A.'s estate and B. were made defendants to a bill in chancery brought by C. seeking
relief on account of said under estimates. The bill was ordered to be dismissed
as to B., and retained only as against A.'s estate, but before formal dismissal
A.'s representative filed a cross bill against B. and C., setting forth the same

Barker et al. *v.* Belknap's Estate et al.

facts as were in the original bill, and the proceedings thereon, and claiming that, from facts established by the decree in the former bill, B. should indemnify A.'s estate against all claims by C. in consequence of short and false estimates of B.'s engineers. *Held,* that B. could rely for defence, *first,* upon the award, as a bar to inquiry in respect to the merits of claims litigated, or which might have been litigated, under it, *second,* upon the merits of the respective claims set up in the cross bill, as disclosed by the proof in the case, irrespective of the award, the same as if it were independent proceeding.

BILL IN CHANCERY.    *The facts in this case are sufficiently stated in the opinion of the court.

*Peck & Fifield,* for the Vermont Central Railroad Company.

*T. P. Redfield,* for the orators.

The opinion of the court was delivered by.

WILSON, J.    The original bill was brought to recover for work and labor done on sections ten and eleven of the Vermont Central Railroad, by the orators, under contract between them and Sewall F. Belknap, Belknap being the contractor for building the whole line of the road.    The bill was made returnable to the May Term of Washington County Court of Chancery, in 1850.    It set forth the contract between the orators and Belknap, and the contract between Belknap and the railroad company, which contained a proviso that the company should make monthly estimates of the work, and that the amount so estimated should be paid, (excepting the reserve of ten per cent.) ; that the engineers of the company fraudulently and by collusion between Belknap and the railroad company made the monthly estimates grossly too small ; that the work so fraudulently omitted amounted to about $17,000., and praying for a decree that the railroad company and Belknap's estate should pay such deficiency to the orators.    The bill further alleged that the railroad company were bound to have their engineers make such estimates ; that they never made any other estimates for Belknap, or any other person than the fraudulent ones stated in this bill ; that the

*See case between same parties in 27 Vt. 700 ; also *Herrick* v. *same defendants, ib.* 673.

value of the over work still remained in the hands of the company ; that they were largely indebted to Belknap's estate, and that Belknap's estate is wholly insolvent.

The answer of the railroad company set forth their contract with Belknap to build the road, denied all privity of contract with the orators, denied that the company ever assented to Belknap's subletting the work to the orators, and alleged that they had no contract or dealings with any one but Belknap.   Their answer also denied all fraudulent estimates, all collusion with Belknap.   It admitted the monthly estimates were, and had to be approximations to the true amounts, but that full and correct estimates of the work done by the orators were made by the engineers, and were satisfactory to and acquiesced in by Belknap, and claimed that the company were not indebted to Belknap's estate, but that Belknap's estate was indebted to them.

The answer of Belknap's administrators denied all fraud, and claimed that the estimates of the work done by the orators was correct.

The case shows that at the March Term, 1853, a hearing was had before the chancellor upon bill, answers, report of masters, and other proofs, that a decree was made in the premises, from which there was an appeal to the supreme court.

Upon the allegations and issues made in the original bill the supreme court decided in *Herrick* v. *The Railroad Company*, 27 Vt. 673 and 700,

1.   That there was no proof of fraud in making the estimates.

2.   That the estimates were too small, but made so by mistake and in good faith.   That no fraud being proved, and there being no privity of contract between the orators and the railroad company, the company was not liable to the orators to pay them for the amount due them and under estimated by mistake.

3.   That chancery had jurisdiction of the case to enable the orators to recover of Belknap's estate for the work so under estimated by mistake on account of the privity of contract between them and Belknap and of his liability by contract to have the work properly estimated by competent engineers.

4.   That the facts stated in the bill as to the value of the over work being still retained by the company for their own benefit, and that the company was indebted to Belknap's estate did not constitute such over work a specific fund in the hands of the company for the benefit of the orators, and for which they might have a decree against Belknap's estate ; nor did the indebtedness of the company to Belknap's estate constitute any sufficient ground of equitable relief for the orators against the railroad company.   Belknap and the company failed to establish that the estimates were correct, but the orators did establish errors in them, and a sum due from Belknap's estate, and upon the ground of mistakes in the estimates, and privity of contract, the orators obtained a decree against Belknap's estate. It appears that the case was remanded to the court of chancery, under a mandate that it be dismissed as to the railroad company, and be retained only as against Belknap's estate, and that it be referred to masters to report the amount of under estimates, the former report having been set aside.

The masters to whom the subject was referred filed their report in November, 1855 ; but the case does not show that any further proceedings were had until March Term, 1860 ; nor had the railroad company been formally dismissed from the bill pursuant to the mandate of the supreme court.   The case shows that at this stage of the proceedings in the original bill against Belknap's estate alone, his administrators being liable for mistakes of the engineers of the railroad company, who were under contract with Belknap, and whose duty it was to have made correct estimates, claimed thereupon that it was wholly the fault of the company that the under-estimates were made, and that for the work so under-estimated, and which had not been estimated or paid for, the company ought to pay to the orators. The administrators of Belknap claimed that the railroad company was indebted to Belknap's estate for the work so under-estimated, for which Belknap's estate was indebted to the orators, and for so much more as the compensation Belknap was to receive from the company for the work exceeded that for which the orators stipulated to do the same work.   They claimed that the decree in favor of Barker and Haight against Belknap's estate had, by establishing the existence of the

errors in the estimates, and the liability of the estate therefor, established a ground of equitable relief in favor of Belknap's estate against the company ; that the same privity of contract which existed between Belknap and the orators, and bound them to pay the orators for the under-estimates, existed between the administrators of Belknap's estate and the railroad company, and bound the latter to pay to them what they were required to pay to the orators.  It was upon these grounds that the administrators of Belknap obtained leave to file a cross bill in favor of the estate of Belknap against the railroad company and Barker and Haight, founded upon equities alleged to have arisen from the facts established by the decree in the former bill.

The cross bill first sets forth the substance of all the allegations contained in the original bill, and the proceedings and decree in that case.  It also sets forth that the contract of Belknap with Barker and Haight was predicated on his contract with the railroad company ; that Belknap relied upon the fidelity of the company fulfilling the contract on its part with him ; that he might fulfil the same stipulations in his contract with Barker and Haight.  It sets forth that the company by its engineers, from time to time, made estimates of the work done by Barker and Haight, and paid over the same to Belknap according to the estimates, who paid the same to Barker and Haight. That Belknap was to have a much larger compensation for the same work than Barker and Haight were to receive by their contract with Belknap ; that the engineers who made the estimates were the servants of the railroad company ; that if there was any error or fraud in the making of the estimates, it arose from the fraud and neglect of the railroad company and its engineers.  This bill further avers that it is the duty of the company to pay to the administrators of Belknap's estate the full amount due for work done by Barker and Haight, and which has not been estimated by the company's engineers, and that it is the duty of the railroad company to indemnify and save the estate harmless in the premises.  It is further alleged that Belknap's estate has been so far settled that the assets of the estate have been distributed among the creditors, leaving nothing in the hands of the administrators to respond any decree that Barker and Haight may obtain against the estate by reason of under-

estimates, and praying that the railroad company may be decreed to pay to the estate such sums as may be due by the terms of the contract between the company and Belknap for work done by Barker and Haight, not estimated by the engineers; and that the company be decreed fully to indemnify the administrators of Belknap against all claims by Barker and Haight, in consequence of false and short estimates made by the engineers of the company.

The railroad company pleaded to the cross bill. The plea set forth all the proceedings in the original bill, and alleged that the matters contained in that bill had been adjudicated upon their merits, and that the matters in the cross bill contained, are the same contained in the former bill and no other. A hearing before the chancellor upon cross bill and plea resulted in a decree by the chancellor that the railroad company be dismissed from the cause pursuant to the mandate of the supreme court in 1855, and that the cross bill be dismissed; from this decree Belknap's estate appealed, and a hearing was had in the supreme court at the General Term, November, 1861. The principal question then decided was whether the plea was a valid defence to this bill. The supreme court had already decided that upon the former bill they would not give Barker and Haight a decree against the railroad company, for there was no privity of contract between them, and the orators had failed to establish fraud in the estimates. The court could make no decree in favor of one co-defendant against another, upon a bill brought against both, alleging fraud and collusion in both, and against which both joined in defence. It was apparent that in order to pass upon the equities sought to be enforced in this bill, it was necessary that the fact of errors in the engineers' estimates should be established conclusively in favor of Barker and Haight against both Belknap's estate and the railroad company. That fact was in dispute in the former bill, and the decree upon that bill established it as a fact. But no question was raised on the trial of the former bill as to the equities between Belknap's estate and the railroad company, and that is the ground on which Belknap's estate claims, in this bill, relief against the company. As to the grounds of the defence set up in the plea, ALDIS, J., in delivering the opinion of the court, says: " The

plea of the former decree can have no greater force as a defence to this bill than it would have if pleaded to an independent bill."

As to the grounds on which the supreme court allowed this bill, the court say : " If the administrators of Belknap see fit to come in by way of a supplemental bill founded upon the decree, and upon their privity of contract with the railroad company, and ask the court to have the railroad company protect them against the operation of the decree by paying to Barker and Haight what .they would otherwise be compelled to pay directly to their orators, (Belknap's administrators,) and have it operate in lieu of a payment to them, we do not see how the railroad company can be prejudiced. Not by way of costs for they have been paid as terms for bringing this bill. Not by way of defence, for whatever just defence they have against Belknap's estate, they still retain as amply as if this were an independent and separate proceeding. It may benefit Barker and Haight but not at the expense of these defendants."

In Herrick's case, 27 Vt. 685, the court say : " The creditors of an estate cannot maintain a bill against the debtors of the estate upon the mere ground of indebtedness and insolvency, and this case, viewed as a claim for mistake in the estimates, merely, is nothing more." The necessity for a cross bill arose from the fact that there could be no relief in favor of Barker and Haight against the railroad company. The principle on which the cross bill is allowed, is not opposed to the rule laid down in Herrick's case, for it does not authorize a decree in favor of Barker and Haight directly against the railroad company. It is true that the claim of Belknap's estate against the company, and the claim of Barker and Haight against Belknap's estate, grow out of the same transaction, but arise from separate and independent contracts. The object of this bill is to enable Belknap's estate to protect itself against any claim of Barker and Haight against Belknap's estate, for which the railroad company is responsible to Belknap's estate ; but the court in allowing the bill did not inquire or decide whether it could be maintained, or what defence would be made to it, or whether Barker and Haight would be entitled to more than their share of the proceeds of the claim as against the other creditors of Belknap's estate. Whether we treat

this bill strictly as a cross bill, or regard it in the nature of an original bill, to settle equities between co-defendants in reference to matters contained in the former bill, it is clear that the rights of Barker and Haight are not enlarged. The most that they can claim is that this bill contained an offer on the part of Belknap's administrators that if any thing be due from the railroad company to Belknap's estate, upon adjusting the claims between the estate and the company, the company may pay it to Barker and Haight, and have it operate in lieu of a payment to Belknap's estate, and to that extent it would protect the estate against the operation of the decree in the former bill. To the extent of this proposition of Belknap's administrators, contained in this bill, the cause was sent back to the court of chancery under a mandate that the bill should be allowed so far as the purpose of the same was indemnity to the extent of the actual indebtedness of the company to Belknap's estate, against the decree in favor of Barker and Haight against Belknap's estate.

The railroad company then made answer to the cross bill, the cause was referred to masters to ascertain the under-estimates to Belknap's estate, for work done by Barker and Haight, and in 1865 a hearing was had before the chancellor on the original bill, answers and report, and on the cross bill answer and report, and a decree in favor of Barker and Haight directly against the railroad company and Belknap's estate under the original bill, and that as between the defendants under the cross bill, it belongs to the railroad company to pay it. From this decree both parties appealed.

It is insisted by the counsel for the railroad company that the decree under the original bill should have been against Belknap's estate alone; and if, under the cross bill, upon the proofs any decree could be made against the railroad company, it should have been that the company indemnify Belknap's estate.

In order to determine how far these conclusions should be admitted, it becomes necessary to examine the grounds of defence alleged by the railroad company, and the evidence on which it is claimed the defence is sustained. The answer of the company first sets forth all the proceedings in the original bill, and insists that the decree made in that bill was made upon its merits, and the answer claims

that the same matters sought to be put in issue in this bill were in that bill and cause fully adjudicated, and that the orators are barred by that decree from prosecuting this bill against the company. It will be observed that this ground of defence is the same that was set forth in the defendants' plea, and it is a bar to all proceedings in this bill upon matters litigated upon their merits under the decree in the former bill.

·That there was no fraud in making the estimates, no privity of contract between Barker and Haight and the railroad company, and that Barker and Haight can not maintain their bill against the railroad company upon the mere ground of indebtedness of the company to Belknap's estate, and the insolvency of the latter are matters which were in dispute in the former bill, and were fully and finally litigated and settled under that decree.

It is insisted by the counsel for Barker and Haight, that upon the further proofs of fraud in the case, they are entitled to a decree directly against the railroad company, upon the allegations and merits of the original bill irrespective of any allegations in the cross bill. Our statute which allows an appeal to the supreme court has taken away by express enactment bills of review.

The question whether the railroad company, by its engineers, made false or fraudulent estimates of the work done by the orators was in controversy in the former bill, and as between the orators and defendants in that bill, it was finally decided there was no fraud. We think it would not be insisted that independent of the allegations in the cross bill, the orators in the original bill should have a rehearing upon the question of fraud; and it is clear that the question of fraud raised and presented by the cross bill and answer, is the identical question of fraud. raised and controverted in the former bill and adjudicated under that decree. It is well settled in this state that the supreme court will not revise a former decision made by the same court, in the same cause, upon substantially the same state of facts. *Story* v. *Vt. C. R. R. Co.*, 32 Vt. 551. The decree in the former bill established the fact that the work done by Belknap under his contract with the railroad company was under-estimated by the company's engineers, but whether the company was still indebted to

Belknap's estate for work under-estimated was not litigated under that decree; and this bill was allowed and it has proceeded to a final hearing upon the alleged claim of the estate of Belknap against the railroad company for under-estimates.

This leads us to consider the second ground of defence alleged by the railroad company. The answer alleges that the estimates were correct; it denies that they were grossly incorrect or fraudulent. The answer alleges that during the period Belknap was prosecuting the labor under his contract, the company made large payments to him in order to enable him to perform the work, and to prevent it being stopped and left in an unfinished and ruinous state to the company; the company were compelled to advance and did advance means to Belknap to enable him to prosecute the work, and that the payments and means so made and advanced by the company to Belknap were of greater amount than the whole work performed by him for the company, and all claims he had against the company, and they deny that they owed Belknap at the time of his decease, but insist that Belknap then owed, and that his estate still owes, them. The answer further alleges that in 1851, after the decree of Belknap, on application in writing, signed by the administrators of Belknap on the part of his estate, and by the railroad company by their President, the probate court for the district of Windsor granted a rule referring all disputed claims and demands in favor of the Vermont Central Railroad Company against the estate of Belknap, and all disputed claims and demands in favor of Belknap's estate, including the claim mentioned in the cross bill, to the final decision of referees; that the referees heard, tried and adjudicated all claims and demands between them, including the claim sought to be recovered by the cross bill, and found a balance due upon the matters so submitted, in favor of the company, and it is insisted by the railroad company that the award of the referees is a bar to all claims set up in the cross bill. It will be observed that the answer admits that in 1851, which was subsequent to the filing of the former bill, the claim in favor of the estate of Belknap, which is made the subject of this bill, was unsettled; but it alleges that at that time there were unsettled claims and demands in favor of the railroad company against

Belknap's estate, and avers that all claims then existing between the estate and company were fully adjudicated under the award.

The orators claim that inasmuch as the railroad company have denied all deficiency in the estimates, and insisted upon a new reference to determine the question and the amount, it must abide their judgment. And it is further claimed by the orators that inasmuch as all parties have joined in such reference, the finding of the referees is the rule as between all the parties. This conclusion does not necessarily follow, for it was competent for the railroad company, in their defence to this bill, to set forth the dealings between Belknap and the company, the nature and standing of the respective claims of the parties at the time of Belknap's decease, and at the time of the submission and reference, being claims which constituted the subject of the alleged reference, and rely first upon the award as a bar to inquiry in respect to the merits of claims litigated, or which might have been litigated under it; and second upon the merits of the respective claims as disclosed by the proofs in the case, irrespective of the award. We understand these are the grounds on which the defence is based. They are grounds of defence which the company would be at liberty to allege if this were an independent bill, and the defendants are not, by reason of the peculiar manner in which the parties are here impleaded, deprived of any defence which they could make, if this were an independent proceeding.

Therefore whether the company are bound by the finding of the of the masters as to the amount of under-estimates, depends upon the invalidity of the award as a bar to the claim sought to be recovered. upon this branch of the defence two questions are presented; first is the claim for under-estimates within the submission; second is it barred by the award?

The case shows that, at the time of the alleged submission and reference, all claims and demands then existing between Belknap's estate and the railroad company, including the claim in question, were within the exclusive jurisdiction of the probate court. The General Statutes, ( section 39 of chapter 48,) provide that, " when there shall be any disputed claim existing between an executor or administrator in behalf of the estate he represents, such disputed

claim may, with the consent of the parties in writing be referred to referees under an order of the probate court, and the award of the referees made in writing and returned to and accepted by the court, shall be final between the parties." The petition to the probate court upon which the rule was issued to the referees recites that: " *Whereas,* there are divers claims and demands in favor of the Vermont Central Railroad Company against the estate of Sewall F. Belknap, deceased, and there are divers claims and demands in favor of said estate in offset to said claims and demands of said railroad company, which are in dispute ; and, whereas, the parties have agreed to refer all said matters to a final decision of" the persons named as referees in the submission. There is nothing in the case which shows that the amount of work done by the sub-contractors, had been estimated to Belknap any larger than the estimates reported to the sub-contractors. They well understood their claims, for all work done by them under their contracts with Belknap, whether estimated correctly, or under-estimated, were against Belknap's estate, and it appears that, prior to and at the time of the submission and reference, claims for under-estimates were presented by the sub-contractors for allowance against Belknap's estate, which was notice to Belknap's administrators that the estate might have a claim against the company for work under-estimated and not paid for. Belknap's claim for under-estimates was an entire claim. It was one of the claims in dispute, and we think the submission is broad enough to cover all claims and demands of every nature then existing between Belknap's estate and the railroad company, including the under-estimates made of work done by sub-contractors. The very object contemplated by the reference was to adjust all claims and demands existing between the estate and railroad company, and to close the estate with as little delay and expense as the circumstances of the case would admit of. The death of Belknap, the capacity in which his administrators acted, their knowledge of the existence of the claim for under-estimates, and the fact that both parties understood that they were entering into an agreement that the decision of the referees should be final, and that the statute made their award in such cases final, would be likely to impress them with the impor-

tance of embracing in the submission, and of submitting to the referees all claims between the parties necessary to be adjusted on a final settlement of Belknap's estate.   Upon the evidence the conviction is strong that all claims in favor of the estate, including the claim for work under-estimated were presented to and acted upon by the referees.   The award after reciting the claims presented by the railroad company says : "The said administrators presented in offset to the claims so presented, certain claims in favor of said Belknap's estate against said corporation, to-wit : for work done and materials furnished in the construction of the Central Railroad, in pursuance of said contract, as specified in the final estimates of said work by the engineers.   For expenses incurred by said Belknap in the construction of the depot at Windsor, and for work done and materials furnished and expenses incurred by said Belknap in the construction of said work, not specified in said contract, or so specified but not included in said final estimates, and finally awarded a balance in favor of the railroad company."   The award shows that an entire claim for under-estimates was presented and considered by the referees.   It does not occur to us how the claim could have been more properly presented in any other form.   The railroad company had no control or dealings with the sub-contractors of the work. Belknap, alone, was obligated to build the road, and the entire claim for all work, whether done by Belknap himself or by persons to whom he sub-let the work, was due and payable to Belknap.   It was so understood and treated during the whole period in which the work was performed.   It appears that testimony was given before the referees tending to prove that the work on sections ten and eleven was under-estimated, and the referees allowed of the entire claim for under-estimates such sum as· in their judgment the estate was entitled to.   The claim being clearly within the submission it is wholly immaterial as matter of law, under the circumstances of this case, whether it was presented and acted upon by the referees, or whether its presentation was omitted by the fault of the orators.

The law is well settled as to the effect of an award of arbitrators or referees upon all claims within the submission.   The authorities fully establish the principle that where the submission is by deed an

award made in pursuance of it will be a bar to any action brought for the recovery of any claim that was included in the submission, though it was not in fact brought before the arbitrator.   In *Robinson* v. *Morse*, 26 Vt. 392, the court held that where the submission is by deed under seal, and award is made in pursuance of the submission, the award is a bar to any suit afterwards brought on notes or other matters intentionally withheld from examination and decision of the arbitrators, if they were included in the submission.   In Russell's Arbitrator, 339, it is said, " that after an award had been made, no action can be maintained for any matter in difference within the scope of the submission, though it were not in fact brought before the arbitrator.   Parties, therefore, must be careful to bring forward at the time of the reference, every claim within the submission on which they intend to insist."   The same rule has been adopted in New York, Connecticut and Massachusetts.   In *Kidder* v. *Cooper*, 19 Wend. 285, the court remarked, "that the rule may sometimes operate harshly, but it is nevertheless a salutary principle from which we can not depart, without the danger of defeating the beneficial ends intended to be answered by allowing parties to submit their controversies to judges of their own selection."   We think the rule is clearly applicable to this case.   The submission was in writing.   It was authorized by and made in accordance with the provisions of the statute.   The referees made their award in writing, upon the matters submitted, it was returned to and accepted by the court, and upon principle it should have the same legal effect as a bar to all claims included in the submission, as if the submission were under seal.

We are entirely agreed that the claims sought to be recovered by Belknap's estate against the railroad company is barred by the award of the referees.

These views render it unnecessary to consider the other questions raised in the case.

The result is that the decree of the chancellor is reversed, and the cause is remanded to the court of chancery under a mandate that the original bill be dismissed, as to the railroad company, with costs ; that a decree be entered therein in favor of Barker and Haight against Belknap's estate for the sum reported due them, and that the cross bill be dismissed with costs to the railroad company.