## BARKER & HAIGHT v. THE ESTATE OF SEWALL F. BELKNAP, AND THE VERMONT CENTRAL RAILROAD COMPANY.

### [IN CHANCERY.]

*Railroad construction contract; estimates of engineer. Interference of chancery. Practice.*

A court of chancery will not reform a contract or set aside an award or judgment, when the party asking its interposition, neglected, for a long time, to make any objection to or complaint respecting the contract or proceeding which he now seeks to avoid.

The work of the orators was, by their contract, to be estimated monthly by certain engineers, who, in pursuance thereof, did make estimates each month during the progress of the work, in reference to which no complaints were made, or dissatisfaction expressed, at the time. *Held*, that after such an acquiescence at the time, the orators could not subsequently have a readjustment of the estimates, on the ground that they were, either by mistake or intentionally, made less than the work actually was.

If the contractor is precluded, by his acquiescence or omission to complain at the time, from afterwards claiming that the estimates were too small, the other party or the engineers will not be allowed to correct errors in the contractor's favor, by deducting them from the estimates of his work subsequent to that time.

A contract, providing for monthly estimates of the contractor's work, according to which he is to be paid, imports accurate and final, and not merely approximate or conjectural estimates.

The orator contracted for the construction of a portion of the railroad of the Vt. C. R. Co., with one B., who had a contract with said company for the construction of their entire road. By both contracts, the work performed was to be estimated monthly, by the engineers of the company. *Held*, that, if the work was estimated too low, the orator would have no remedy against the company, without proof of their connivance at such underestimate.

The supreme court will ordinarily make no additional order respecting the disposition of a suit in chancery, at a subsequent term to that at which it is remanded.

After a suit has been remanded to the court of chancery, with an order to dismiss the bill as to one of the defendants, that court could, probably, without its being a contempt of the mandate of the supreme court, allow a cross bill to be filed against that defendant, by another defendant, for the purpose of settling the equities between them. REDFIELD, CH. J.

APPEAL from the court of chancery. *The orators in the present case had a contract with Sewall F. Belknap for the construction of one or more sections of the railroad of the Vermont Central Railroad Company, for the construction of whose entire road said Belknap, had contracted. The general provisions in the orators' contract with Belknap were similar to those in Herrick's contract, for

*See the reporter's explanation in note at the commencement of Herrick's case, *ante* p. 674.

a statement of which, and also of those in the contract between Belknap and the Vermont Central Railroad Company, see *ante* p. 674, *et seq.*

The claims of the orators were also similar to those of Herrick; but neither the amount reported in their favor, or that for which they obtained a decree in the court of chancery, appears in any papers in the possession of the reporter.

The case was argued by the same counsel and at the same time with that of Herrick, and, immediately after the reading of the opinion in that case, at the April Term, 1855, the opinion of the court in the present case was delivered by

REDFIELD, CH. J. In regard to this case, which is certainly more or less wanting in many of the essential grounds upon which we have finally sustained Herrick's case, in part, I have, at times, greatly hesitated, whether the bill ought not to be altogether dismissed, as one of the members of the court was, at first, inclined to think as to both cases.

A decree setting aside an award, or judgment, like any decree reforming a contract, as such a decree as here sought always is, is quite in the discretion of the court of chancery, and of this court, on appeal. By discretion, as applied to a judicial tribunal, we understand, of course, a legal discretion; a discretion to be regulated by general rules, and exercised according to settled precedents, in contradistinction to the mere arbitrary will of the judge. But, among the general grounds, upon which such redress is always denied, one is, where the party seeking to reform the contract, or set aside the former decision, omitted, for a long time, to make objection to the contract or proceeding which he now seeks to avoid. The general rules of law, governing the courts upon this subject, will not allow a readjustment of an allowance, under contracts of this character, unless complaint was made in regard to all the estimates sought to be reformed, at the very time of their being made. In attempting the application of this rule to the present case, I do not find that any complaint was made of the estimates, previous to June 24, 1846. Nor is there anything in the case to show that, up to that time, the plaintiffs had any expectation that the future estimates would increase the allowance already made for

work done. And, if we would bind the plaintiffs by their acqui-escence in the estimates made, we cannot allow the engineers to diminish them, by future, and what the engineers call, more accu-rate admeasurements. To bind the party by his acquiescence in the estimates already made, and then to allow these estimates to be virtually reduced, by deductions from subsequent estimates, would be absurd. Nor do we find anything in the contract, which will justify the engineers in making only conjectural estimates, from month to month, and a final, and accurate one, once in six months, more or less, according to convenience. The contract provides for monthly estimates of the work. And this, in our view, imports accurate and final estimates. If these estimates are made monthly, and acquiesced in by the contractors, the company, or Belknap, are not at liberty to reduce them by future admeasurements. And, if made and acquiesced in, they will bind the contractors, unless by some oral understanding, it appears they were considered, by both parties, mere approximations, to be subsequently corrected, which does not satisfactorily appear in the present case.

We think, therefore, the plaintiffs are justly entitled to have an allowance for what was deducted from the estimates of their work, done after June 24, 1846.

The mistake, too, of ten feet in the bench, if it should clearly appear that it affected the monthly estimates made to the plaintiffs, should be set right. I question whether it will appear that this mistake affected the monthly estimates, as it probably must have done the proximate estimates, but I have not examined the matter so as to feel any confidence in my conjectures. This will be exam-ined by the commissioners or masters.

The result to which the masters came, in this case, seems to have been reached by allowing 25 yards a day to each shoveller, in all weather and in all earths, as a kind of average. But this is by no means satisfactorily established by the proof, in my judgment, notwithstanding the testimony of Kennedy, that they will do twice that, and near sixty yards, in sand. This, in my opinion, is a suffi-cient impeachment of his practical skill in the business. But his willingness to venture such an opinion, ought, perhaps, to be regarded as some evidence of his general sincerity and .honesty,

however much it may abate our confidence in his capacity as a reliable civil engineer.

There is no satisfactory evidence, in this case, that the company connived at any improper estimates by the engineers. The only ones for which the plaintiffs are allowed to recover, were undoubtedly made in good faith, so that the bill, upon the principles laid down in Herrick's case, must be dismissed as to the company, and only retained as to Belknap's estate. It is perhaps worthy of remark, as tending to rebut the inference that incorrect estimates were made, in this case, to the plaintiffs, that they were mostly made by Samuels, who is shown to have been quite above the common grade of the company's resident engineers. The 10,000 yards slide, and the one of 50,000 yards are sufficiently disposed of by the decision of the engineers rejecting them. And the same is true of the culvert condemned, and the stone excavated and not removed. It would seem, too, that if any recovery could be had for either of these claims, aside of the contract, it could be had at law. There seems to be no necessity of any resort to a court of equity in regard to them.

There is, too, a kind of staleness, an odor of after-thought, about this case, which creeps out at every stage of its progress, which is a legitimate species of evidence, and which would induce any one, in the very great uncertainty of the testimony, and its apparent dramatic character, and all its principal pivots being made to rest almost exclusively upon the shoulders of Stephen Herrick and Walter Forsythe, who, with every disposition to believe in their perfect honesty and sincerity, and especially the former,—I know less of Forsythe,—seem to me, in spite of my wish to find it otherwise, to be, to some extent, laboring under a kind of idiosyncracy upon this subject. All this would, almost of necessity, I think, induce any fair-minded person to solve the doubts in the case in favor of the defendants.

Decree of the chancellor reversed, and the report of the masters set aside, and the case remanded to the court of chancery, to be disposed of according to the decretal order on file, *q. v.*

At the November Term following, the counsel for Belknap's estate applied to have the mandate for dismissing the bill, as to the Vermont Central Railroad Company, so modified, as to enable the court of chancery to allow a cross bill to be filed, in favor of said estate against said railroad company, to settle the equities between them; this court having declined to settle said equities upon the present bill.

BY THE COURT. No such question was made when the case was in this court, and now that it has been in the court of chancery for months, we should certainly not make any additional order.

REDFIELD, CH. J., said, as an individual, and without examination, he could entertain no doubt of the power of the chancellor to allow such a motion, upon sufficient reasons, and that it would be no contempt of the mandate of this court: but as a court, they could give no intimation of the law in this way.