PRESENT: ROYCE, CH. J., ROSS, POWERS, VEAZEY, TAFT, and
ROWELL, JJ.

---

IN RE CAROLINE E. CHICKERING IN THE SUIT R. D.
SMITH & OTHERS v. THE RUTLAND RAIL-
ROAD COMPANY & OTHERS.

[IN CHANCERY.]

*Railroad. Mortgage Bonds. Sleeping Security. Statute
of Limitations. Suit by Trustees. Effect
of Lapse of Time.*

1. PARTIES MAY COME INTO A PENDING SUIT. While a cause is pending in the
   Court of Chancery to foreclose a mortgage, brought by a part of the bond-
   holders in behalf of themselves and all others, the owners and holders
   of bonds who might choose to come into the suit, other owners of bonds
   secured by the same mortgage, on petition, in the discretion of the
   court, may be made parties orators.
2. And this is so, although the cause had passed to the Supreme Court,
   and, at the time the petition was brought, had been pending for several
   terms in the Court of Chancery, having been remanded with a mandate
   affirming the decree below, and the bonds of the original orators paid
   off.
3. STATUTE OF LIMITATIONS. TRUSTEES. The bringing of a suit by the
   trustees of the bondholders to foreclose the mortgage prevents the run-
   ning of the Statute of Limitations as to all the bondholders; and what-
   ever is done by the trustees, or by one or more of the bondholders, in
   behalf of all, for the enforcement of the common security, enures to the
   benefit of all.
4. The result is not changed, although, after a decree in the first suit by
   the trustees, after an appeal to the Supreme Court, and a return with
   a mandate establishing the mortgage, the cause was discontinued, with-
   out a decree being drawn up and enrolled. This was under an arrange-
   ment by which a new charter was obtained in the interest of the

defendant (which succeeded to the rights of the company issuing the bonds), authorizing the issuing of preferred guarranteed stock, to be exchanged for the bonds, and by which, or the avails of which, a large part of the bonds were paid off.

5. RECOGNITION OF MORTGAGE. The mortgage was recognized, indirectly by the charter, by the payment of a large sum on the mortgage debt to prevent the trustees taking possession, and by offering to the petitioner to exchange the stock for her bonds.

6. APPEAL. An appeal from the chancellor to the Supreme Court vacates the decree.

7. If the decretal order which was affirmed by the Supreme Court was so drawn that it would exclude the petitioner, the Court of Chancery had the right to allow her to become a party.

PETITION to become a party oratrix in another suit pending in chancery.

Heard on petition, answer, traverse, and testimony, March Term, 1882, Rutland County. VEAZEY, Chancellor, decreed:

" It is adjudged and decreed that the said cause is still pending in this court; that the said Caroline E. Chickering is entitled on her said petition to become a party complainant therein; that she is the holder and owner of the first mortgage bonds described in her petition, and the same have not been paid, and that they are outstanding, valid obligations, secured by the first mortgage of the Rutland & Burlington railroad company. And it is further *pro forma* adjudged and decreed that she is entitled to the same relief and remedy upon her petition in said cause now that was granted to the original orators in said cause by the decree of this court at the September Term thereof, 1877, which is referred to, and which was subsequently affirmed by the Supreme Court."

In the suit of R. D. Smith et al. v. The Rutland R. R. Co. et al., September Term, 1877, Chancellor Ross made the following decretal order:

It is *pro forma* ordered and decreed that the first deed of trust and mortgage mentioned in the orator's bill is valid; that the orators, holders of the bonds or obligations mentioned in the stipulation on file, are by said trust deed or mortgage secured their payment, and that the orators are entitled to be allowed interest on the principal of said bonds at the rate of seven *per centum per annum*, payable semi-annually, and that all sums which have or may become semi-annually due on said bonds, as interest, whether expressed in coupons or not, are entitled to draw interest at the rate of six per cent from the time when due until paid; and that the amount due the orators on said bonds or obligations shall be ascertained and computed upon that basis:

And it is further ordered and decreed that by reason of the default under

said first deed of trust or mortgage, as well as by the decree of 1855, which is referred to in said bill, the orators are entitled to the transfer of said railroad and property covered by said first deed as therein provided, *unless* the amount due the orators on said bonds or obligations, with interest and costs, is paid within —————— months. And the court doth reserve all further directions in said cause, and any of the parties to said cause are to be at liberty, at any time, to apply to the court, as they may be advised, and as occasion may require.

## Mortgage, in part:

"By and between the Rutland and Burlington Railroad Company, a corporation duly constituted and organized under and by virtue of the laws of the State of Vermont, of the first part, and Franklin Haven and Samuel Hooper of Boston, in the county of Suffolk, and Commonwealth of Massachusetts, of the second part.

*Whereas,* The said corporation, at a meeting of the stockholders thereof, duly notified and held on the sixth day of February current, have authorized and empowered the directors of the said corporation to issue the obligations or promissory notes of the said corporation in sums of five hundred and one thousand dollars each, amounting in the aggregate to a sum not exceeding one million and eight hundred thousand dollars, etc. * * *

*Now, therefore, this indenture witnesseth,* That the said Rutland and Burlington Railroad Company, in consideration of the premises, and of one dollar, etc., and by these presents do grant, bargain, sell, and convey, unto the said parties of the second part, the railroad and franchise of said company, etc.

* * *

But, nevertheless, upon the trusts, and to and for the ends, intents and purposes following; that is to say:

*First,* In trust for and to secure the payment unto the lawful holder or holders thereof, ratably, without preferences, of the aforesaid obligations or promissory notes so to be issued as aforesaid, etc.

* * *

*Fourth,* Upon trust, that in case the said corporation shall fail, neglect, omit or refuse to pay the principal of or the interest upon the said obligations or notes, or any thereof, as the same shall respectively become due and payable, and such neglect, failure, omission or refusal shall continue for the period of four months after payment thereof shall be demanded in writing, the said parties of the second part, or their successors in the said trust, may, by themselves or their attorneys, agents or servants, take possession of all description of the said property, rights, and premises," etc.

Mandate for decree in the case of Cheever & Hart, Trustees, & Others *v.* Rutland and Burlington R. R. Co. & Others, Supreme Court, January, 1870, in part:

"It is further suggested to the Court of Chancery that this cause be held as 'with the chancellor,' until the first day of June, A. D. 1870, before issuing any order for the transfer of the possession of the trust property, and if at that time, upon summary examination, it shall be made clearly to appear to the chancellor that the defendants have paid the outstanding unconverted first mortgage bonds so far as accessible, then in that case to further delay the order for a transfer of possession for the time being, to enable the defendants to discover the remaining unconverted bonds and make complete payment and obviate the need of such transfer."

The other facts are sufficiently stated in the opinion.

*Prout & Walker*, for the defendant.

This suit was brought by the orators "In behalf of themselves and all others, the owners and holders of said notes, who may choose to come in and participate in these proceedings and contribute to the expenses thereof." The oratrix did not attempt to "come in." The decretal order, which was affirmed, does not cover the bonds in suit. Statute of Limitations. The claim is barred. The bonds were issued in 1851; matured in 1863; the orators' bill filed in 1875; and this petition in 1881. *Jeffers* v. *Cook*, 12 Rep. 586; *Shaw* v. *Cook*, 78 N. Y. 194; 2 Dan. Ch. Pl. & Pr. 1210; *Tatam* v. *Williams*, 25 Eng. Ch. 346; R. L. ss. 951–2; *Hughes* v. *Graves*, 39 Vt. 359.

There is no joint interest in the bonds secured by the mortgage, and the mortgage itself indicates that it was given to secure separate notes or obligations held by different persons and parties; and the holders of these bonds are interested in the mortgage security in unequal proportions. The mortgage debt is not a debt due the trustees in the mortgage, but is a debt due the several owners of the bonds, and their rights are several and individual; and the case is not at all different in this respect from an ordinary mortgage given to secure several notes held by different parties. A payment of one would not affect a defence as to others; a part could be enforced before the statute had run and others suffered to outlaw. They are separate, independent obligations held by different parties. 104 U. S. 673; Jones R. R. Sec. s. 340; *Clark* v. *Iowa City*, 20 Wall. 583; R. L., s. 975; Wood Lim., ss. 222, n. 3, 227, 233; *Moore* v. *Bank of Columbia*, 6 Pet. 86; *Bell* v. *Butler*, 1 Pet. 351; 25 Vt. 210; 19 Vt. 26; 15 Rep. 385. Presumption of payment is absolute. Ang. Lim. ss. 543–45; *Martin* v. *Bowker*, 19 Vt. 526. No relief can be granted even in favor of the parties to the cause beyond the terms of the decree. The decree puts a complete end to the suit. *Gelston* v. *Codwise*, 1 John. Ch. 188; Hunt. Suit Eq., 54. No new proofs or pleadings can be had. *Crenze* v. *Hunter*, 2 Ves. 156; *Shipbrooke* v. *Hinchingbrook*, 13 Ves. 386; *Legrand* v. *Whitehead*, 46 Eng. Ch. 274; *Taylor* v. *Pop-*

*ham*, 15 Ves. 72; *Clark* v. *Hall*, 7 Paige, 382; 5 Dill. 531; Adams' Eq. 746; Mit. Eq. Pl. 476–7; 2 Mad. Ch. 517; 2 Dan. Ch. Pl. & Pr. ss. 996, 1260; Seton Dec., 31; 2 Smith Ch. Pr. 394; Lube Eq. Pl. 123; 4 Sand. 354. There can be no decree in favor of the orators in the original cause, as they are not the owners or holders of the bonds referred to in the petition; and they are not the trustees of the petitioner in respect to her bonds. 7 Paige, 585; 2 Dan. Ch. Pl. & Pr. 996; 1 Barb. Ch. Pr. 333; 10 Paige, 378; *Brooks* v. *Gibbons*, 4 Paige, 373; 38 Vt. 370. *See*, also, 24 Eng. Ch., 382; *Good* v. *Blewvitt*, 19 Ves. 336; 3 Dan. Ch. Pl. & Pr., 2236; Story Eq. Pl., s. 99; 1 Hoff. Ch. Pr. 418; 1 Eng. Ch. 491; 5 Eng. R. & C. Cas. 33.


*P. R. Kendall*, for petitioner.

After a final decree in a cause in which a party has a right to come in, an entirely new suit will not be permitted. *Brooks* v. *Gibbons*, 4 Paige 373; 10 Paige 383. In the present case the interests of the petitioner were represented by the complainants, Smith and others, and the trustees of the first mortgage. The other bondholders may be allowed to come in. Jones R. R. Sec. ss. 434, 448; *Mason* v. *Railroad*, 52 Me. 82; *Marsh* v. *Railroad*, 40 N. H. 548, 560; *Campbell* v. *Railroad*, 1 Woods, 447; *Sterndale* v. *Haukinson*, 1 Sim. 393. The bondholders are in such case *quasi* parties to the suit, and have a right *at any time* to intervene and become actual parties. Jones R. R. Sec. s. 361; Story Eq. Pl. s. 96, n. 1; Hunt. Suit Eq. s. 16; Jones Mort. 1385. All the beneficiaries under a mortgage in trust should be made parties. Story Eq. Pl. 201; *Hallett* v. *Hallett*, 2 Paige 15; Story Eq. Pl. 99, 102–3. The petitioner was a party to the decree. *Sewall* v. *Brainerd*, 38 Vt. 371; *Campbell* v. *Railroad*, *supra*.

If she was left out by accident or collusion she may have relief upon motion or petition. Jones R. R. Sec. s. 448; Rob. Dig. 139; *Porter* v. *Vaughn*, 22 Vt. 269; *Barker* v. *Railroad*, 35 Vt. 451; *Langdon* v. *Railroad*, 53 Vt. 228. A decree

upon a mortgage must be entire and merge the mortgage. Jones R. R. Sec. s. 438 ; Story Eq. Pl. ss. 141-2-3. A complainant in such case is at no time *dominus litis* absolutely. The court for cause may give the control to other parties. Jones R. R. Sec. ss. 361–2, 433–6 ; Adams' Eq. 257, 320 ; Mit. Eq. Pl. 26 ; Story Eq. Pl. 89, n. 5, 102 ; *Ross* v. *Crary*, 1 Paige, 416. All the *quasi* parties having an inchoate interest in the suit carried on by the trustees the Statute of Limitations does not run. 1 Sim. 393 ; Ang. Lim. 331 ; Dan. Ch. Pl. & Pr. 667, 668, 1208 ; *Mason* v. *Railroad*, 52 Me. 82 ; *Knapp* v. *Railroad*, 20 Wall. .117 ; 3 Dill. 487 ; 4 Dill. 533. The payments revived the mortgage. Jones Mort. 1196–8 ; 2 Wash. R. Prop. 171 ; *Hough* v. *Bailey*, 32 Conn. 288; *Richmond* v. *Aiken*, 25 Vt. 326; *Martin* v. *Bowker*, 19 Vt. 526 ; and the *entire* mortgage, Jones R. R. Sec. s. 431 ; Ang. Lim. 246, 434. Defendant estopped, being a trustee. Ang. Lim. 466 ; Perry Trusts. ss. 859, 860, 601. The deed of the Rutland & B. R. R. Co. *subject* to this mortgage was an acknowledgment in writing. Wood Lim. 199 ; *Palmer* v. *Butler*, 36 Iowa, 576. It was discretionary with the chancellor whether the party should proceed by petition or supplemental bill. *Wiggins* v. *Gray*, 24 How. 303, citing 10 Pet. 288, 410; Mit. Ty. Eq. Pl. 18.

The opinion of the court was delivered by

Ross, J. This is a petition to the Court of Chancery for the county of Rutland, by Caroline E. Chickering, alleging that she is the owner of two of the bonds of the late Rutland & Burlington R. R. Company, and asking to be allowed to come as party oratrix into the suit, R. D. Smith and others v. the Rutland Railroad Company and others, to enforce against the defendants, who have succeeded to the possession and property of the late Rutland & Burlington Railroad Company, the mortgage covering such property given by the last named railroad company to trustees, to secure the bonds held by her in common with those held by the orators in that suit.

In its answer the defendant, Rutland Railroad Company, urges, in substance, that the petitioner's rights under the mortgage had

become barred by the Statute of Limitations before she filed the petition; and that the suit, R. D. Smith and others, against them, although brought for the orators named therein, and all others holding bonds secured by the same mortgage, had reached that stage in prosecution and adjustment, that it was not in the right nor discretion of the Court of Chancery to permit her to become a prosecuting party to that suit, and partake of the fruits thereof.

I. The validity of these defences is dependent upon many facts found in the voluminous files in the former suits relative to this security, and its legal status and enforcement, called the Ellis-Gray-Loring suit, which terminated in a decree in 1855; the Cheever and Hart suit, who were the trustees in the mortgage securing the petitioner's bonds, and who were seeking to enforce that mortgage under the decree in the Ellis-Gray-Loring suit, for the common benefit of all the bondholders whose bonds were secured by that mortgage, and which, by mandate from this court to the Court of Chancery in 1870, established the mortgage as a valid existing security for all the bonds secured thereby, and the right of the trustees, both under the mortgage and the decree in the Ellis-Gray-Loring suit, to the immediate possession of the property, but advised a delay in placing the trustees in possession, if the defendants in that suit should in a short day pay all the bonds secured by the mortgage "so far as accessible," and "then in that case to further delay the order for a transfer of possession for the time being, to enable the defendants to discover the remaining unconverted bonds and make complete payment and obviate the need of such transfer;" the R. D. Smith and others suit, brought to enforce the mortgage under the decrees in the former suits, for the payment of such of the bonds as still remained unpaid, which also resulted in a mandate from this court to the Court of Chancery in 1878 according to the orators the relief prayed for; and upon certain additional facts established by the testimony taken on the petition and answer. It will not be necessary to rehearse and set in order all the facts shown by the files, concessions and evidence in the former cases. I shall only state a few of the more material and determinative facts

bearing upon the issues raised by the defendant's answers. The petitioner's bonds are dated February 1st, 1851, and matured February 1st, 1863. The bill R. D. Smith and others was brought to the September Term of the Court of Chancery for the county of Rutland, 1875. This petition was filed in this suit September 7, 1881. None of the interest or principal of the bonds has been paid since the bonds fell due February 1, 1863. If this action was a suit at law against the Rutland & Burlington Railroad Company for the collection of the bonds, the action would be barred by the Statute of Limitations, notwithstanding all that has been done for the enforcement of the mortgage securing the bonds, and notwithstanding the payments made by that company, and those who have succeeded to its rights and property, of bonds secured by the mortgage, which secures the petitioner's bonds, down to as late as October, 1880. In such an action the petitioner would stand alone upon her bonds, as independent obligations of the Rutland & Burlington Company, and her right of action upon the bonds would be barred by the lapse of six years from the time they matured. But this is not the position of the petitioner in this case. She is here seeking to enforce the security furnished by the mortgage given for the common benefit of all holders of bonds secured thereby. The mortgage was given to trustees for the common benefit of all of the bondholders. Upon the default of the Rutland & Burlington Railroad Company in making payment of the bonds at maturity, the legal title to the property covered by the mortgage vested in the trustees for the benefit of all the bondholders, the petitioner as well as the others. Whatever the trustees did to establish and enforce the mortgage, they did as well for the benefit of the petitioner as the other bondholders. Upon default in the payment of the bonds secured by the mortgage, the right of the trustees to enter upon and take possession of the mortgage premises for the common benefit of all the bondholders at once accrued. This right under the mortgage if suffered to lie dormant for fifteen years by the trustees and bondholders, and if in that time there was no recognition of the existence of the

mortgage by the mortgagor or those standing in the mortgagor's right to the mortgage property, by payment on the principal or interest of the debt secured by the mortgage or otherwise, became barred by the Statute of Limitations, or rather in equity, by lapse of time in analogy to the Statute of Limitations. With the mortgagor in possession, such silence and want of recognition of the mortgage and of the mortgagee's rights under it, by both the mortgagee and mortgagor, for fifteen consecutive years, would afford a conclusive presumption of payment of the debt secured by the mortgage, and consequently of the extinguishment of all rights of the mortgagee under the mortgage. R. L., ss. 951, 952; Ang. Lim., c. 34; Wood Lim., c. 18; *Whitney* v. *French*, 25 Vt. 663; *Richmond* v. *Aiken*, 25 Vt. 324. The Cheever and Hart suit was brought by them as trustees of the mortgage in contention, in 1864, prosecuted vigorously and with great activity on both sides until the mandate sent from this court to the Court of Chancery in 1870; and, more or less so, until the suit was discontinued in 1873. During all that period the mortgage and the rights secured thereby were far from a *sleeping* security and *sleeping* rights, as all who were at all conversant with that controversy can well recall, and none with more distinctness than the defendant, the Rutland Railroad Company, which came into existence during and partly as the result of that suit, and its present solicitor, as is fully shown by the files in that suit. In that suit the mortgage as a security for the payment of all the bonds named therein, including those owned by the petitioner, was established, and the right of the trustees to take immediate possession of the property covered by the mortgage to secure and enforce the payment of all the bonds named therein. The defendants in that suit, to whose rights in the mortgage property the defendants in this suit have succeeded, recognized and yielded to the mortgage now under consideration, and the rights of the trustees and the bondholders thereunder, by the payment of a large sum on the mortgage debt to prevent the trustees taking possession of the mortgage property under the mortgage. This enforced recognition of the mortgage was none

the less effectual to prevent the mortgage and the rights of the bondholders under it from lapsing by lapse of time, because the suit was allowed to be discontinued without a decree being drawn up and enrolled, and without the payment of all the bonds secured by the mortgage.

This enforced recognition of the mortgage enured to the benefit of all the bondholders. If that suit had resulted in a decree adverse to the trustees, the petitioner, though not a party thereto except as represented by the trustees, would have been bound thereby, and her rights under the mortgage conclusively adjudicated against her. Mit. & Ty. Eq. Pl. 265. If the suit had not been discontinued the petitioner and the orators in the suit, R. D. Smith and others, could have come in and taken the benefit of that adjudication. By the discontinuance of that suit without decree ; by the blotting out of existence of the Rutland & Burlington Railroad Company ; by the foreclosure of a subsequent mortgage, and the organization of the Rutland Railroad Company, under the foreclosure and a special charter, as the successor of the Rutland & Burlington Railroad Company, to the mortgage property ; by the new trustees of the mortgage becoming interested and officers in the Rutland Railroad Company, so that their interest and duties were antagonistic to the rights of the bondholders, for whom they were trustees ; and by the other defendants having become interested in the mortgage property, a new bill was rendered necessary to enforce the rights of the unpaid bondholders. Such suit was brought by R. D. Smith and others in 1875, in behalf of themselves and all others the owners and holders of bonds who might choose to come into the suit. That suit was in active prosecution until 1878, when the right of the orators under the mortgage, and the adjudications before had thereon, was established by this court and the suit remanded to the Court of Chancery to have a decree therein perfected. That suit remained on the docket of the Court of Chancery until this petition was filed therein. The bonds held by the orators, Smith and others, were recognized by the defendants as secured by the mortgage, but not paid by the

Rutland Railroad Company until October, 1880. In the charter of the Rutland Railroad Company—which alone defends against this petition—granted in 1867, the existence of this mortgage as a subsisting security for the bonds named in it, was indirectly recognized; and power was given to that company to issue preferred guaranteed stock to take up the bonds secured by this mortgage, either by exchanging such stock for such bonds, or by raising money for the payment of the bonds by a sale of the stock. The petitioner, within less than fifteen years before filing her petition, was offered this stock in exchange for her bonds. These facts furnish a most emphatic denial of the contention that the mortgage and the rights of the holders of the unpaid bonds secured thereby have lapsed, by the trustees and bondholders allowing the mortgage and the rights secured to them under it to lie dormant and unrecognized by the mortgagor and its successors for fifteen consecutive years. It is not the law that each individual bondholder must institute a suit in his own name to enforce the mortgage to prevent the effect of the lapse of time on his right to enforce it.

Such practice would not be tolerated in chancery proceedings. The pendency of a suit brought by the trustees, or when they improperly refuse or neglect to sue, by one or more of the bondholders, for themselves and all the other bondholders, for the enforcement of the mortgage would abate subsequent suits by individual bondholders for the same purpose. The prevention of a multiplicity of suits is one of the grounds of equity jurisdiction. Ordinarily, bondholders are allowed to bring a suit in equity for the enforcement of such a mortgage only in casethe trustees improperly refuse or neglect to sue upon request, and then they must bring the suit as well for all the other bondholders as themselves. While the bonds are the separate property of each bondholder, and when he seeks to enforce the obligation arising from the bond alone, he stands by himself unaffected by what the other bondholders may have done or omitted to do, the mortgage securing the bonds is common to all the bondholders, given to trustees for their common benefit; and whatever is done by the

trustees, or by one or more of the bondholders in behalf of all for the enforcement of the common security, enures to the benefit of all, and keeps the security alive for all the bondholders, unless some of them by an affirmative act renounce the right and act of the trustees or other bondholders to enforce it in their behalf.

Hence, the petitioner's right to have the mortgage enforced as security for the payment of her bonds was not barred by the lapse of time when she filed her petition. There was no period of fifteen years between the maturity of her bonds and the filing of her petition, during which either the mortgagees allowed the mortgage to lie dormant, or the mortgagor or those standing upon its rights, sufferred it to remain unrecognized as the security for the bonds therein named.

II. It is conceded by the defendants that the bill in the suit, R. D. Smith and others, is broad enough to allow the petitioner to become a prosecuting party thereto ; but it is contended that the decretal order of the chancellor excluded from the benefits to be derived therefrom all who had not then become orators in the suit. The appeal to the Supreme Court from that order opened it, and took the whole case to the Supreme Court and vacated the decree of the Court of Chancery. *Gale* v. *Butler*, 35 Vt. 449. The Supreme Court found no error in the action of the Court of Chancery and affirmed the decree, and sent the case back to the Court of Chancery with a mandate to enter up such a decree. The Court of Chancery have never done so. At the first term of the Court of Chancery, after the case was remanded from the Supreme Court, the cause was entered with the court for hearing. Subsequently a decretal order was filed, the death of one of the orators suggested, and then an order filed vacating the decretal order. The three following terms the case was entered with the court for hearing, and then continued. Between that term and the following March Term, 1881, in October, 1880, the Rutland Railroad Company paid the bonds held by the orators named in the cause. At the March Term, 1881, the Rutland Railroad Company filed an answer in the cause for some undisclosed purpose. At the September Term, 1881, this petition

was filed in the cause, and has been proceeded with in said court. It will be observed from the foregoing statement that no final decree has ever been made in said cause; nor has the cause ever been discontinued or dismissed from the docket. It was a cause pending in the Court of Chancery when the petitioner filed her petition. It appears that the officers of the Rutland Railroad Company purchased the bonds held by the orators named in the bill, soon after the case was remanded from the Supreme Court, and took control of the suit. So far as the original orators were concerned the bill had served its purpose when the defendant railroad took up and paid in October, 1880, the bonds which they held when they brought the bill.

The case might have been entered as settled, discontinued or dismissed at the March Term, 1881; but for some undisclosed purpose the defendant, the Rutland Railroad Company, kept it on foot and filed an answer therein. This left the case pending in the Court of Chancery when the petitioner asked to be allowed to become a party. The bill was brought for her benefit, if she should see fit to become a party, and was appropriate to furnish her the requisite remedy. Her rights under the mortgage, as we have seen, were not barred by lapse of time. The objections which the defendants have or can have to the enforcement of the mortgage security in favor of the petitioner were equally available to them against the orators. They claim no defence against her which they did not claim against R. D. Smith and others, except lapse of time. The facts brought into contention by the bill show that she could not be barred by lapse of time from enforcing the mortgage more than the orators named in the bill. Under these circumstances, it was within the discretion of the Court of Chancery to allow her to become a party at any time before the final decree in the cause should be signed and enrolled.

Even if the decretal order which was affirmed by the Supreme Court was so drawn that it would exclude the petitioner, the Court of Chancery, when the cause was remanded to have a final decree drawn, had the right in the exercise of sound discretion to allow the petitioner to become a party. That was not a matter

_In re_ Chickering.

upon which the Supreme Court had adjudged, or given the Court of Chancery any directions. The question did not arise in the case until after it had been remanded from the Supreme Court. Matters arising in a cause upon which the Supreme Court has not adjudicated nor made a mandate, are as fully within the control of the Court of Chancery after the mandate as before. _Barker_ v. _Belknap_, 27 Vt. 700 ; _Gale_ v. _Butler_, 35 Vt. 449. The usual method, by which a person having a common right and entitled to a common remedy with the orators applies to be let into a pending suit, brought by the orators for themselves and all others having such right, is by petition. In practice, however, such persons are often allowed to prove their claims before the master, without becoming actual parties to the suit. The better practice is to have them become parties. 1 Dan. Ch. Pl. & Pr. 286, n. 1 ; 2 Ib. 1014, 1200 to 1209 ; Mit. & Ty. Eq. Pl. 474.

The result is, no error is found in the decree, and the same is affirmed and the cause remanded.