## THE LAMOILLE VALLEY R. R. CO. AND ESSEX COUNTY R. R. CO. *v.* FREEMAN BIXBY AND MONTPELIER & ST. JOHNSBURY R. R. CO.

## CROSS-BILL: FREEMAN BIXBY *v.* THE LAMOILLE VALLEY R. R. CO. AND THE ESSEX COUNTY R. R. CO.

[In Chancery.]

*Mandate from Supreme Court not Obligatory on Court of Chancery as to Matters not in Issue. Witness, Opinion of as to Value of Property. Expert. Costs.*

1. Matters *not in issue, inadvertently* decided by the Supreme Court, are under the control of the Court of Chancery after a mandate has been sent down; thus, the defendant B. had recovered a judgment against the defendant railroad, one of three railroad companies, partners operating their respective roads as one continuous line, and had levied on an engine, baggage car, &c., as the property of said company; whereupon the orators,—two of the three partners,—brought a bill to enjoin B., alleging, that it was partnership property; that the liabilities of the partnership largely exceeded its assets; and that, therefore, the property could not be held on B.'s execution. B. answered and filed a cross-bill, praying that his judgment be declared a first lien on the rolling-stock, and the same enforced by a sale; or, if it was decided that he was entitled to have only an undivided third part sold, to have that set apart and sold. There was no evidence as to the proportionate interest of the partners in the engine. The mandate was "for the amount of *one third* the value" of the property levied upon. Whereupon the orators applied to the Court of Chancery for leave to amend their bill by setting forth the proportion of interest that the defendant railroad had in the engine, claiming that it could not exceed one eighth; which leave was granted. A master was appointed to ascertain the value of the property and such interest; and on the coming in of the report a decree was entered for B. for 59-479 of such value; *Held,* that the mandate was not obligatory on the Court of Chancery; that no issue was raised by the pleadings as to the proportion of interest; that the court *inadvertently* assumed that the defendant railroad had a one third interest; and that the amendment was properly allowed.

2. WITNESS. EXPERT. VALUE OF ENGINE. An attorney, not an expert in the use, value, or manufacture of locomotives, but who had made some investigation as to the value of the engine in controversy, was allowed to testify as to its value; and the court thought it could not say as matter of law that it was error.

3. The court refused to reverse the decree on the question of costs, although the defendant was allowed his costs, while the orators had prevailed on some questions, and claimed that they had on more than the defendant.

BILL IN CHANCERY. Heard on a master's report and exceptions thereto, December Term, 1884. Ross, Chancellor, decreed, "that the defendant, Freeman Bixby, is entitled to receive 59-479 of the sum of $4,000 and interest on the same since the 16th day of October, A. D. 1877, being the sum of $703.56, and his costs taxed and allowed at the sum of $148.09. And in case said sum of $703.56 and the costs of this suit aforesaid are not paid to the clerk of Caledonia County Court, with interest on the same from and after the 1st Tuesday of December, A. D. 1884, within sixty days from this date, for the benefit of the said Freeman Bixby, that the clerk of the Court of Chancery issue an execution in favor of said Freeman Bixby against the defendants in the cross-bill for the aforesaid sum of $703.56 and costs, directing the sheriff of Caledonia County to levy said execution upon the engine, tender, and baggage car, mentioned in said cross-bill, and sell the same in due course of law in satisfaction thereof. And the residue, if any, return to the clerk of the court for the benefit of the orators in the original bill, or those entitled to the same under said orators."

The original bill is printed in 55 Vt. 236 (where the original case is reported), except the following:

"Come your orators, the Essex County Railroad Company, a corporation duly chartered, organized, and existing under the laws of the State of Vermont, and the Lamoille Valley Railroad Company, a corporation also duly chartered, organized, and existing under the laws of this State, and represent that the said Essex County Railroad Company is the lawful owner of a line of railroad extending from Connecticut river in the town of Lunenburg to St. Johnsbury, where it connects with the railroad of the Montpelier & St. Johnsbury Railroad Company, and that the said Lamoille Valley Railroad Company is the owner of a line of railroad extending from the shore of Lake Cham-

plain in Swanton, to the outlet of Joe's Pond in the town of Danville, where it also connects with the railroad of the Montpelier & St. Johnsbury Company, and the several roads of the said three companies form a continuous line of railroad across the State from Lake Champlain to Connecticut river." * * * *

"And your orators further show, that among the personal property purchased with money raised upon the joint or partnership liability of said three companies is a railroad engine with tender and baggage car attached known and called by the name of 'Hyde Park.'

"And your orators further state, that one Freeman Bixby, of Montpelier, at the October General Term of the Supreme Court, 1876, for the County of Washington, recovered a judgment against the said Montpelier & St. Johnsbury Railroad Company for the sum of $5,646.07 damages, and for the sum of $144.59 costs of suit, and the said Bixby has taken out an execution on said judgment, and placed the same in the hands of William H. Preston, the sheriff of said county of Caledonia for service, and the said Preston by the direction of said Bixby has levied said execution upon the said engine, tender, and baggage car, and has advertised the same for sale thereon, and the said Bixby has directed the said sheriff to sell said engine, tender, and car, upon his private debt against the said Montpelier & St. Johnsbury Railroad Company, it will to that extent diminish the joint or partnership property which should be applied to pay the joint or partnership liabilities aforesaid (which are already insufficient for that purpose), and thus not only impair their proper security, but will throw the additional burden of said partnership debts upon your orators to the extent of the value of said property.

"And your orators further allege, that the said judgment in favor of the said Bixby against the Montpelier & St. Johnsbury Railroad Company was recovered in an action for an alleged injury to his person while travelling upon the road of the said company by reason of some defect in their road.

"And the orators further allege, that they were not in fact or in law parties or privies to said action or judgment, but are wholly strangers thereto and not in any manner bound or precluded thereby. * * * *

"And your orators aver, that if said property is sold

and removed by said Bixby, they will have no adequate remedy at law against him.

"Your orators pray that the said Bixby be immediately enjoined from selling said engine, tender, and car, on his execution, and that on the hearing, the same be made perpetual, and for any and all relief the case may require."

Cross-bill in part:

"And your orator further shows that said three corporations jointly purchased for their use in running said line of railroad, five locomotives with tenders attached, known and called respectively, 'St. Johnsbury,' 'Lamoille,' 'Swanton,' 'Hyde Park,' and 'Essex,' also two baggage cars, and a large number of freight and passenger cars." * * * *

"And your orator further shows that under said joint contract for operating the railroads of said three corporations, that said corporations were jointly and severally liable to your orator for said injury.

"And your orator further says that inasmuch as said three corporations are jointly and severally liable to pay him for said injury, that a court of equity will not aid the Essex County Railroad Company and the Lamoille Valley Railroad Company, and assist them in avoiding the payment of said claim, and compel your orator to bring a multiplicity of suits in order to get his pay.

"And your orator further shows that he has the right to have said execution levied upon the rolling-stock of said three corporations, and have the whole or a part of the same sold to satisfy the same. And that your orator's right is superior to the rights of any of the joint creditors of said three corporations who have no security for their debts, and also superior to the rights of the bondholders of the bonds issued under and secured by the first mortgage of said three corporations, and also the preference mortgage upon said line of railroad and rolling-stock. And that your orator's claim is a first lien upon the rolling-stock of said three corporations."

The prayer was that the defendants in the cross-bill set forth:

"The amount of rolling-stock owned by said three railroad corporations and by what name designated:

Railroad Co. *v.* Bixby.

" That the title to the said engine and tender, called the 'Swanton,' and passenger car attached, may be settled, and the title confirmed to your orator; that your orator's judgment against the Montpelier & St. Johnsbury Railroad Company may be decreed a first lien upon the rolling-stock owned by the said three corporations, and that said lien be enforced by a sale of said rolling-stock or so much thereof as may be necessary for the payment of said judgment; and in case this Honorable Court shall decide that your orator was only entitled to have one undivided third part of said rolling-stock sold on said execution, then your orator prays that in default of the payment of said judgment, that said third part be designated and set apart and sold, or enough thereof sold to satisfy said judgment," and for further relief.

Mandate from the Supreme Court:

" It is ordered and decreed, that the decree in this cause of the Court of Chancery be reversed, and decree for the orator in the cross-bill, Bixby, for the amount of one third the value of the engine 'Hyde Park,' tender, and baggage car attached thereto, levied upon by said Bixby, with interest from the date of the injunction in this case, viz.: the 16th of October, 1877, and the costs of this suit.

" The court will cause the value of such property to be ascertained by a master (unless otherwise agreed) and one third of the valuation, with interest as aforesaid stated; and if not paid to the clerk of Caledonia County Court within sixty days from final decree in this cause, then execution may issue against the defendants in said cross-bill for the amount of such one third valuation, with interest and costs; and said engine, tender, and baggage car so levied upon, sold by the sheriff of said Caledonia county, by due course of law, on said execution, in satisfaction thereof; and the residue returned into the office of the clerk of said County Court, for the benefit of the orators in the original bill, and those claiming under them."

After the mandate was sent down, the orators asked leave of the Court of Chancery, and were allowed to make the following amendment:

" And the said orators further allege, that the Lamoille Valley Railroad extends from Lake Champlain in the town

of Swanton to the outlet of Joe's Pond in the town of Danville, a distance of a little more than eighty-three miles; that the Essex County Railroad extends from the Connecticut river in Lunenburg to the village of St. Johnsbury, a distance of a little more than twenty-two miles; and the Montpelier & St. Johnsbury Railroad extends from its intersection with the Essex County road at the village of St. Johnsbury to its intersection with the Lamoille Valley Railroad, near the outlet of Joe's Pond, a distance of about fourteen and three fourths miles. And your orators further say, that the great majority of the money to build the said three roads was raised by the sale of the joint bonds of the said three railroad companies, secured by a joint mortgage of the whole of the said three railroads, and that a much larger proportion of said money was expended in the building of said Montpelier & St. Johnsbury road than its proportion *pro rata* per mile. And the rolling-stock and furniture on the said roads, including that levied on by the said Bixby, were all purchased with funds raised as above stated, or from the whole earnings of the said three roads, which all went into a common fund.

"And the said orators further say, that if the said three railroad companies are to be held and regarded as tenants in common of the rolling-stock so purchased including that levied upon by said Bixby, or if said Bixby is entitled to take and hold the interest of said Montpelier & St. Johnsbury Railroad Company, the share or interest therein owned by the said Montpelier & St. Johnsbury Railroad Company is not so much as its whole proportion in length bears to the length of the three roads; but if it is to be regarded as owning a share of said personal property in proportion to its relative length, the share would be less than one eighth undivided part. And the orators aver that in no possible event can the share or interest of said Montpelier & St. Johnsbury Railroad Company exceed one undivided eighth of said property."

The master found, that the length and location of said roads were substantially as set forth in said amendment; that said Bixby was injured in May, 1872; that he recovered his judgment at the General Term in 1876; that the three railroads, May 1, 1871, "executed a joint mortgage of the three roads and the rolling-stock of that date to Luke P.

·Poland and Abraham T. Lowe, trustees, to secure the payment of $2,300,000 in railroad bonds* issued by the said three companies; that before January, 1873, the bonds had been sold or hypothecated; and that 'a large amount of $1,400,-000 in bonds were sold previous to the month of May, 1872.'"* * * * *

"The Lamoille Valley, the Montpelier & St. Johnsbury, and the Essex County railroads were built under the joint arrangement made between the three companies, and the greater part of the funds to build said roads and the funds to pay for all the rolling-stock used upon said roads, including the engine 'Hyde Park,' tender, and baggage car in question, were obtained upon the joint credit of the said three companies, by the sale and hypothecation of said joint mortgage bonds, and the earnings of said roads while being run by said three companies under said contract.

"The engine 'Hyde Park' and tender were purchased of the manufacturers in Portland, November 21, 1871, on the joint credit of the three companies, and were paid for out of the joint funds. None of the earnings of the three roads were ever divided, and there never was any settlement between them.

---

*The following is an extract from the mortgage securing said bond:

"And the said parties of the first, second, and third parts hereto, hereby mutually covenant and agree with each other, their successors and assigns, that as between themselves the bonds shall be divided in proportion to the number of miles of their respective roads, if they are needed, and that they will each pay the proportion of said bonds which shall be used in aid of the construction of their respective roads, together with the interest thereon, as it shall from time to time become due and payable, and in the case of default of either or any of said parties of the first, second, and third parts, in the payment of its or their proportion of the principal or interest of said bonds as the case may be, it shall be lawful for the other or others of said parties to pay the same, and the party or parties so paying the said principal or interest shall be subrogated to all of the rights of the holders of said bonds and be at liberty to enforce the same against the said defaulting party or parties; or at their option compel contribution by suit at law or in equity, or, upon application of the party or parties so paying the principal or interest which should have been. paid by the said party or parties in default, the said party of the fourth part and their successors shall be at liberty, and they are hereby empowered, to enforce the trusts above provided against the railroad property and equipment of said defaulting party or parties, for the benefit of the party or parties so paying in the same manner and by the same means as are above provided against the property of said parties of the first, second, and third parts in case of their default. And for that purpose and in consideration of the sum of one dollar by each of said parties to the other in hand paid, the receipt whereof is hereby acknowledged, the said parties of the first, second, and third part do hereby mutually covenant, grant, and agree to and with each other, that the said parties of the fourth part and their successors in said trust shall be decreed both in law and equity to be vested with the title of their respective roads, property, and equipment in severalty, and to hold the same upon the trusts and provisions above declared, as fully to all intents and purposes as if the said trusts and provisions were here repeated and again declared."

" The mandate requires the master to find the value of the engine 'Hyde Park,' tender, and baggage car attached thereto, levied upon by said Bixby, at the time of the injunction, October 16, 1877.

" The said Bixby, to prove the value of said engine, including the tender, introduced as a witness J. P. Lamson, who was said Bixby's attorney in the original suit and had to do with directing the levy of the execution, and who intended to be present and bid on said property at the sale thereof." * * * *

[The qualifications of Mr. Lamson as a witness are set out in the opinion substantially as in the report.]

"I received and heard the testimony to which said solicitor excepted. Considering said testimony so objected to in connection with other testimony unobjected to, I find the value of said engine 'Hyde Park,' tender, and baggage car, on the 16th day of October, 1877, to be $4,125.67, one third of which sum is $1,341.67, and the interest on said last-named sum from October 16, 1877, the date of said injunction, to the 2d day of December, 1884, is $573.79, making a total of $1,915.46.

" The question of whether the testimony of said Lamson was properly admitted is submitted to the court. And in case said testimony ought not to have been admitted and considered, then, discarding said testimony, I find the value of said engine, tender, and baggage car to be on the 16th day of October, 1877, the sum of $3,000, one third of which last-named sum is $1,000, and the interest on said last-named sum from October 16, 1877, the date of said injunction, to the 2d day of December, 1884, is $427.67, making a total of $1,427.67."

*S. C. Shurtleff,* for defendant Bixby.

The orators brought their bill, and the defendant answered, and filed his cross-bill, in which he claimed that the statute —R. L. s. 3353—gave him the right to attach and sell the rolling-stock, in an action for injuries, and asked the Court of Chancery to determine his right to the property attached. The prayer of the cross-bill shows that Bixby was in doubt whether or not he could hold the whole or only one third of

the property levied on; for if he could hold only one third, then if such undivided third should be sold on the execution, the purchaser would have to resort to chancery to have the whole property set to one party or the other, or have it sold and one third given to him.

The *sole object* in bringing the cross-bill was to have the whole matter decided and relief obtained without any further proceedings, as the prayer of the cross-bill shows. Each party took such testimony as he wished.

The orators claim that the question as to whether or not Bixby could hold one third of the property attached, was not before the Supreme Court, or any other court until the amendment.

This certainly is error, as the cross-bill, and especially the prayer to the cross-bill, will show. But in any event the Court of Chancery cannot change the decision of the Supreme Court. R. L. ss. 774–7; *Sortwell* v. *Montpelier & Wells River R. R. Co.* 56 Vt. 180.

The most the court has ever said, is that when a question like that of cost was not decided by the Supreme Court, that the Court of Chancery could decide that question. *Gale* v. *Butler,* 35 Vt. 449. A bill of review will not lie, as no new facts have come to light. R. L. s. 777. As a petition for a rehearing, this proceeding cannot be maintained, as it is filed out of time. *Canerdy* v. *Baker,* 55 Vt. 578.

When a cause has been once settled by the Supreme Court, it is well settled that the court will not review a former decision. *Stacy* v. *Vt. Cen. R. R. Co.* 32 Vt. 551. The only ground that counsel for the orators can claim he ought to be heard, is, that the court surprised him in its decision of the case,—which is never ground for relief. *Herrick* v. *Belknap,* 27 Vt. 673; *Morgan* v. *Houston,* 25 Vt. 570; *Pettes* v. *Bank,* 17 Vt. 435.

This cause was commenced before the statute authorizing a reference to a master of any question of fact. Acts of 1878, No. 17, p. 33. Any person who has seen a piece of

property and examined it can state his opinion as to its value. *Crane* v. *Northfield,* 33 Vt. 124; *Bates* v. *Sharon,* 45 Vt. 474; *Fulsome* v. *Concord,* 46 Vt. 135; Whar. Ev. s. 477.


*Poland,* for the orators.

The orators brought their bill upon the theory that the three railroad companies were partners; that the property levied upon by Bixby was partnership property; that the partnership liabilities largely exceeded all the partnership assets, and that by settled law, Bixby, who had obtained judgment against one of the partners severally, could not levy his execution upon any specific portion of the partnership property and sell it to satisfy his claim.

The defendant, Bixby, by his answer, or his cross-bill, did not deny the partnership, or that the property levied on, was partnership property, or that the partnership liabilities exceeded the whole assets; but sought to avoid the effect of these facts, by alleging that his claim was one that the firm was liable for, and that he was deceived and misled into bringing his suit against one alone. The bill says nothing in regard to the proportion of the relative partnership interests. Upon the theory of the orator's bill this was wholly immaterial. The defendant Bixby's answer and cross-bill contain nothing in relation to the proportions of the partnership interest. The only word in the case that can have any reference to that subject is in the prayer of the cross-bill, when the defendant prays that his judgment may be decreed to be a first lien upon all the rolling-stock of the three corporations, or, if not on the whole, upon one third of it. The *proportion of interest* which the Montpelier & St. Johnsbury Company owned in the partnership property was not put in issue by the pleadings in the case; nor was there a particle of evidence introduced on that subject.

The decision of the Supreme Court first made it apparent, that it was material to show what was the interest

of the Montpelier & St. Johnsbury Company, as unaffected by partnership debts.

It is perfectly well settled by decisions of this court, that after a case has been remanded from the Supreme Court, if, in the judgment of the Court of Chancery, further proceedings are necessary in order to do justice between the parties, either by allowing amendments, or a cross-bill, or supplemental-bill, to allow such further proceedings to be had. *Barrett* v. *Sargeant,* 18 Vt. 365; *Briggs* v. *Shaw,* 15 Vt. 785; *Lane* v. *Marshall,* 15 Vt. 785; *Slason* v. *Cannon,* 19 Vt. 219; *Porter* v. *Bank of Rutland,* 19 Vt. 410; *Barker* v. *Belknap,* 27 Vt. 700; *Gale* v. *Butler,* 35 Vt. 449.

*Canerdy* v. *Baker,* 55 Vt. 578, has no bearing. That was an application for a rehearing. *French* v. *Chittenden,* 10 Vt. 127, was decided under the old system, when the Supreme Court was the only Court of Chancery, and final decrees were made in that court. If the Court of Chancery had power to allow the amendment, it was a matter within the discretion of that court, and not reviewable in this.

But if reviewable, there is no doubt it was a sound and just exercise of the chancellor's power. The fact has been deemed immaterial by the counsel for the orators; the decision of the court made it highly important. That parties are to be allowed to shape their causes and defences to meet unexpected views of the law affecting their rights, the whole law of allowing repleading is founded upon that idea. If the party, or his counsel, has been grossly faulty, or grossly ignorant, he is to be punished by terms, on being allowed to set himself right in court.

Lamson's testimony was mere hearsay. The facts reported establish clearly that the Montpelier & St. Johnsbury Company had only such a proportionate interest in the property as their road had in the mileage of the whole line.

Cost. Bixby claimed the whole property attached. He got *one third.* The allowance of full costs to Bixby, under these circumstances, is wholly contrary to the well-estab-

lished principle applicable to courts of equity. The orators prevailed in the controversy much more than the defendant.

The opinion of the court was delivered by

ROWELL, J.  Bixby brought suit against The Montpelier & St. Johnsbury Railroad Company, to recover for personal injuries sustained by him while a passenger on its road, recovered judgment, took out execution, and levied it on an engine called Hyde Park and the tender and a baggage car as the property of said company; whereupon The Lamoille Valley Railroad Company and The Essex County Railroad Company brought this original bill against Bixby and The Montpelier & St. Johnsbury Company, to enjoin Bixby from selling said property on his execution, for that all of said companies were partners, and as such were running and operating their respective roads as one continuous line of road; that the property levied upon was partnership property; that the partnership liabilities largely exceeded the partnership assets; and that therefore the said Bixby could not in equity lawfully take and appropriate said property to the satisfaction of his execution, it being against one of the partners only; and he was temporarily enjoined from so doing.

Bixby answered said bill, and filed a cross-bill, the object of which was, as far as material to be stated, as expressed in the prayer, to have his judgment declared a first lien on the rolling-stock of the three companies, and the same enforced by a sale thereof, or of so much thereof as was necessary to satisfy said judgment, and in case it should be decided that he was entitled to have only an undivided third part thereof sold, to have that part designated, set apart, and sold, or what might be necessary thereof, to satisfy said judgment.

Such proceedings were had in the case, that at the General Term in October, 1882, the Supreme Court sent down a mandate for a decree for said Bixby " for the amount of

*one third* the value" of the property levied upon with interest thereon from the date of said injunction, to be ascertained by a master; whereupon the orators in the original bill applied to the Court of Chancery for leave to amend their bill by setting forth the proportion of interest that The Montpelier & St. Johnsbury Company had in said property, claiming that in no event had it more than an undivided eighth interest therein. Leave was granted, Bixby objecting, and the bill amended accordingly, and the cause sent out to a master to ascertain the value of said property, and the proportion of interest of The Montpelier & St. Johnsbury Company therein; and on the coming in of his report, a decree was entered for said Bixby for 59-479 of such value, and costs; from which he appealed.

It is considered that before said amendment was made, no issue was raised by the pleadings as to the proportion of interest of The Montpelier & St. Johnsbury Company in said property. The original bill alleges the purchase of it on joint or partnership account, but does not allege the proportion of interest of any of said companies therein; nor was such allegation material, as that question was foreign to the purpose of the bill, which was, to enforce the equitable right that creditors of an insolvent partnership have, as well as the partners themselves, to have the partnership assets applied in satisfaction of partnership debts in preference to the creditors of the individual partners.

The cross-bill alleges the purchase of said property in much the same way as the original bill does, but makes no allegation as to the proportion of interest of The Montpelier & St. Johnsbury Company therein, nor says anything about it, except that in the prayer it seems to assume that it has a one third interest.

It is familiar law that no facts are properly in issue that are not charged in the bill, and that relief cannot be granted for matters not charged, although they may be apparent from other parts of the pleadings and the evidence; for the

court pronounces its decree *secundum allegata et probata.*
*Porter* v. *Bank of Rutland,* 19 Vt. 410, is illustrative of this
rule. But this question was not raised by the evidence even,
as was said in argument and not denied.

Thus it seems, that by some inadvertency, the Supreme
Court assumed, without allegation or proof, that the interest
of The Montpelier & St. Johnsbury Company in said prop-
erty was a one third interest, and decided accordingly,
whereby injustice was done; and the important question
now is, whether the mandate of that court is obligatory on
the Court of Chancery to the extent of depriving it of the
power to allow such further proceedings in the case as were
necessary to remedy the wrong and do justice between the
parties.

Matters *in issue* in a cause that are *decided* by the Su-
preme Court are, as a general rule, taken from the control
of the Court of Chancery by the mandate. *Sortwell* v. *The
Montpelier & Wells River R. R. Co.* 56 Vt. 180; *Sherman &
Adams* v. *The Windsor Manufacturing Co., ante,*57.

Matters *in issue* in a cause that are *not* decided by the Su-
preme Court are as fully under the control of the Court of
Chancery after mandate as before. *Barker & Haight* v.
*Belknap's Est.* 27 Vt. 700; s. c. 39 Vt. 168; *Gale* v. *Butler,*
35 Vt. 449; *In re Chickering,* 56 Vt. 82.

Matters *not in issue* in a cause that are *inadvertently* de-
cided by the Supreme Court, whereby injustice is done,
*ought to be* as fully under the control of the Court of Chan-
cery after mandate as before; otherwise, as here, the party
might be entirely without remedy; for it is impracticable
for him to apply to the Supreme Court in the premises, as
frequently the first information he obtains of its decision is
derived from the mandate, when it is too late to apply: nor
can he resort to a bill of review, for under the statute that
is sustainable only for causes originating after, or that were
unknown to the party before, the rendition of the decree
from which the appeal was taken: nor will a petition for a

rehearing lie, for that must not state matters that do not appear in the pleadings or the statement of which is not warranted by the pleadings; and if it makes a case different from that on which the decree was founded, by introducing facts and circumstances not before the court at the time the decree was made, it will be dismissed. *Wood* v. *Griffith,* 1 Mer. 35; s. c. 19 Ves. 550; 3 Dan. Ch. Pr. & Pl. (2d Am. ed.) 1679; 1 Hoff. Ch. Pr. 564.

Now while it may well be said, as it is in *Canerdy* v. *Baker,* 55 Vt. 582, that " every consideration demands that a *decision* of the Supreme Court shall be final, and especially that it shall not be changed by a single judge as chancellor," yet it may also be said, as there, that error, inadvertence, mistake, are *not* decision. And especially should they not be so regarded when the thing decided *was not in issue;* but in such case the matter should rather stand as though no decision had been made, and the Court of Chancery left to allow further proceedings in its discretion. This question has not been decided in this State, but to hold thus accords with the rule that judgments are conclusive as between the parties even only as to matters put in issue by the pleadings and decided. Thus, in *Sintzenick* v. *Lucas,* 1 Esp. 43, Lord KENYON said that in order to make a record evidence to conclude any matter, it should appear that the matter was in issue. *Manny* v. *Harris,* 2 Johns. 24. So in *Campbell* v. *Consalus,* 25 N. Y. 613, it was held in a subsequent suit that a matter formerly adjudged between the parties was not thereby concluded because not then in issue by the pleadings. *People* v. *Johnson,* 38 N. Y. 63; *Standish* v. *Parker,* 2 Pick. 20, and *n.* 2; *Outram* v. *Morewood,* 3 East, 346.

Even an *agreement* between parties that matters foreign to the pleadings should be given in evidence and decided, will not, at law certainly, it seems, enlarge the operation of the judgment as an estoppel. *Guest* v. *Warren,* 9 Exch. 379; *Mondell* v. *Steel,* 8 M. & W. 858; *Wolfe* v. *Washburn,* 6 Cow.

262; *Campbell* v. *Consalus*, 25 N. Y. 613; 2 Smith Lead. Cas. [*672]. And although in chancery an executed consent decree on matters not in issue would probably be binding, yet here the orators in the original bill never consented that this question might be litigated· and determined, and· it was not in fact litigated.

The next question is as to the competency of Lamson as a witness to the value of the property in question. The master finds that he was Bixby's attorney in the original suit, and had to do with directing the levy of the execution on the property, and intended to bid at the sale of it in the interest of Bixby; that he was not an expert in the manufacture, use, or value of locomotives, but had seen and examined the one in controversy several times during the month next before the injunction was issued, and during that time had made some investigation and inquiries for the purpose of determining its value, and from such examination, investigation, and inquiries, had formed an opinion as to its value and what he would bid for it at the sale, and entertained that opinion when he testified.

When the value of property is in controversy, the opinion of persons acquainted with its value is admissible; but there is no rule of law defining how much a person must know about property before he can be admitted to give an opinion of its value; though he must have some acquaintance with it, sufficient to enable him to form some estimate of its value, and then it is for the triers to determine the weight to be given to such estimate. *Bedell* v. *Railroad Co.* 44 N. Y. 367.

But whether a witness possesses the requisite qualifications to make him competent to testify his opinion, is a preliminary question for the tribunal before which he is called; and its decision is conclusive, unless it appears from the evidence to have been erroneous, or was founded on an error in law. *Perkins* v. *Stickney*, 132 Mass. 217; *Wright* v. *Williams' Est.* 47 Vt. 222.

It does not appear what the character and extent of Lamson's investigations and inquiries were, nor what the nature of the information he obtained; and unless we can say as matter of law that no amount of information thus obtained could make him competent, we cannot say there was error in admitting him; and we hardly think we can say this, as such opinions are admitted, not as the opinions of experts, strictly so-called, for they are not formed on special study or training or professional experience, but rather from necessity, on the ground that they depend on knowledge that any one may acquire, but which the triers may not have. *Swan* v. *County of Middlesex,* 101 Mass. 173; *Crane & wife* v. *Northfield,* 33 Vt. 124; *Cavendish* v. *Troy,* 41 Vt. 99.

The only remaining question is as to costs; and it is sufficient to say that this court rarely if ever reverses a decree on the question of costs alone.

Decree affirmed and cause remanded.